United States District Court
Southern District of Texas
**ENTERED**
April 12, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JAMES RIVER INSURANCE COMPANY, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-20-4365 |
| § | |
| JANMARK RESOURCES, INC., *et al.*, § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are four motions for summary judgment. Dkts. 47, 59, 60, 61. Plaintiff James River Insurance Company's ("James River") motion for summary judgment argues it is entitled to judgment as a matter of law on its declaratory judgment claim that it has no duty to defend or indemnify Cal Dive International, Inc. ("Cal Dive"), Janmark Resources, Inc. d/b/a Rife Industrial Services ("Janmark"), or any other affiliated entity for claims arising out of Jeffery Allen Mauldin's lawsuit for injuries sustained while working on the M/V LONESTAR. Dkt. 47. Defendant Certain Underwriters at Lloyd's, London's ("Underwriters") motion for partial summary judgment on its counterclaim argues that James River is liable as the insurer for any judgment Underwriters obtains against Janmark. Dkt. 60. Underwriters' motion for summary judgment on its crossclaim against Janmark argues that Janmark is liable under contractual indemnification to Cal Dive, whose rights Underwriters claims through subrogation. Dkt. 59. Finally, Janmark's motion for summary judgment argues that it is entitled to judgment as a matter of law on Underwriter's crossclaim. Dkt. 61. After reviewing the motions, responses, replies, and the applicable law, the court is of the opinion that the motions filed by Underwriters should be DENIED and the motions filed by James River and Janmark should be GRANTED.

## I. BACKGROUND

### A. Factual Background

This case involves potential indemnification and insurance liability following the settlement of an underlying lawsuit. *See* Dkts. 7, 32. Jeffery Allen Mauldin alleged he was injured on September 27, 2014, onboard the M/V LONESTAR, where he worked as a welder. Dkt. 59, Ex. 1 at 2. Mauldin then sued Cal Dive and Rife Industrial Services, Inc. ("Rife Inc.") for negligence and unseaworthiness of the LONESTAR (the "Underlying Lawsuit"). *Id.* at 3–6. Cal Dive was the owner of the LONESTAR. *Id.* at 3. However, there was some confusion regarding the second defendant because Mauldin knew he was employed by "Rife" but was not sure if it was Rife Inc. or Rife Industrial Services, LLC ("Rife LLC"). Dkt. 59, Ex. 2 at 11–12. Discovery later showed that Rife LLC paid Mauldin's wages, while Rife Inc. had forfeited its charter in 2013, prior to the events in the Underlying Lawsuit. Dkt. 59, Exs. 3, 5.

Cal Dive and Rife LLC executed a Master Service Agreement ("MSA") to govern their relationship. Dkts. 49, Ex. 1A; 59 Ex. 6A. Mauldin's work on the LONESTAR occurred pursuant to the terms of the MSA. Dkt. 59, Ex. 6 ¶ 3. Cal Dive and Rife LLC were the only two parties to sign the MSA, with Jeannette Rife signing on behalf of Rife LLC. Dkts. 49, Ex. 1A at 27; 59, Ex. 6A at 24. Jeannette Rife is also the owner and sole director of Janmark. Dkt. 59, Ex. 10B. The MSA begins with a recitation that the parties to the contract are Cal Dive, Rife LLC, "and [Rife LLC's] affiliated and related companies." Dkts. 49, Ex. 1A at 4; 59, Ex. 6A at 1. Central to this dispute, the MSA contains an indemnification provision that requires Rife LLC and its affiliated and related companies to indemnify Cal Dive. Dkts. 49, Ex. 1A at 14–17; 59, Ex. 6A at 11–14.

2

After Mauldin filed suit, Cal Dive requested indemnification under the terms of the MSA but never received a response. Dkt. 59, Ex. 7. Ultimately, Cal Dive settled the Underlying Lawsuit for $185,000. Dkt. 59, Ex. 13. Underwriters, as Cal Dive's insurer, paid the settlement and sought indemnification from Janmark through subrogation. Dkt. 49, Ex. 1B at 30. Janmark, under its assumed name of Rife Industrial Services, is the sole insured on James River Policy No. 00062958-0. Dkts. 56, Ex. 2A at 277–278; 59, Ex. 10A; 60, Ex. 3.

**B. Procedural Background**

James River commenced the instant lawsuit—naming Janmark, Rife Inc., Rife LLC, Mauldin, Cal Dive, and Doe Insurance Company #1 as defendants—seeking a declaratory judgment that it has no duty to defend or indemnify the defendants or any affiliated entity for the claims asserted in the Underlying Lawsuit. Dkt. 1 ¶ 38. Underwriters' answer included a crossclaim against Janmark seeking indemnification under the terms of the MSA and a counterclaim against James River as Janmark's insurer. Dkt. 7 at 10–21. James River filed an amended complaint clarifying that the named defendant Doe Insurance Group #1 is appropriately identified as Underwriters. Dkt. 32.

James River moved for summary judgment on its declaratory judgment claim and against Underwriter's counterclaim. Dkt. 47. Underwriters moved for summary judgment on its counterclaim against James River (Dkt. 60) and its crossclaim against Janmark (Dkt. 59). Finally, Janmark moved for summary judgment on Underwriter's crossclaim. Dkt. 61.

## II. Legal Standard

The court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

Whether Janmark must indemnify Cal Dive under the terms of the MSA is a threshold question for all four motions currently before the court. *See* Dkts. 48, 59, 60, 61. Therefore, the court will address this question before turning to the motions.

**A. Janmark's Contractual Duty to Indemnify**

The MSA states that Rife LLC and its affiliated and related companies agree to indemnify Cal Dive. Dkts. 49, Ex. 1A at 14–17; 59, Ex. 6A at 11–14. Underwriters argues that Janmark owes it a duty of indemnification under the MSA as an affiliated company of Rife LLC. Dkts. 59 at 10, 60 at 9. The court disagrees.

The MSA is governed by the general maritime law of the United States, and where that is not applicable, by the laws of the state of Texas. Dkts. 49, Ex. 1A at 26; 59 Ex. 6A at 23. "Applying federal law in the contract context includes looking to 'principles of general contract law' that can be found in treatises or restatements of the law." *Univ. of Tex. Sys. v. United States*, 759 F.3d 437, 443 (5th Cir. 2014) (quoting *Franconia Assocs. v. United States*, 536 U.S. 129,

4

141–42, 122 S. Ct. 1993 (2002)).  However, "not 'every term in every maritime contract can only be controlled by some federally defined admiralty rule.'"  *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 27, 125 S. Ct. 385 (2004) (quoting *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313, 75 S. Ct. 368 (1955)).  The court may apply state contract law "[t]o the extent that it is not inconsistent with admiralty principles."  *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 459 (5th Cir. 1995).

A party must generally be a party to a contract to be subject to its terms.  *See Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016) ("a party generally must be a party to a contract before it can be held liable for a breach").  "[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration."  Restatement (Second) of Contracts § 17 (1981).  It is a principle of general contract law that mutual assent means a meeting of the minds of the parties to a contract.  *Imperial Indus. Supply Co. v. Thomas*, 825 F. App'x 204, 207 (5th Cir. 2020); *see also id.* § 17 cmt. c ("The element of agreement is sometimes referred to as a 'meeting of the minds.'").  A written contract "does not evince any mutual assent" of a non-signatory.  *See Magee v. Nationstar Mortg., LLC*, No. 5:19-MC-017-H, 2020 WL 1188445, at *2 (N.D. Tex. Mar. 11, 2020) (finding no evidence of mutual assent to an arbitration agreement by parties who were non-signatories).  "While a contract may by its terms empower non-signatory parties or third-party beneficiaries to enforce it against signatory parties, the reverse is typically not true."  *Weatherford Int'l, LLC v. Binstock*, 452 F. Supp. 3d 561, 574 (S.D. Tex. 2020) (Lake, J.).

"The interpretation of a contract—including whether the contract is ambiguous—is a question of law."  *McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013).  The relevant facts are not in dispute, but the parties offer conflicting legal

5

interpretations. *See* Dkts. 48, 59, 60, 61. Cal Dive and Rife LLC executed the MSA. Dkts. 49, Ex. 1A at 27; 59, Ex. 6A at 24. The MSA begins with a recitation that the parties to the contract are Cal Dive, Rife LLC, "and [Rife LLC's] affiliated and related companies." Dkts. 49, Ex. 1A at 4; 59, Ex. 6A at 1. Jeannette Rife signed the MSA on behalf of Rife LLC. Dkts. 49, Ex. 1A at 27; 59, Ex. 6A at 24. Rife LLC and Janmark are distinct legal entities and separate from their owners. Dkts. 59, Ex. 9; 61, Ex. 1; *see also Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 385 (5th Cir. 2000) ("Corporations function as distinct legal entities, separate from the individuals who own them."); *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013) ("Due to the limited liability that corporations and LLCs offer to their owners, a plaintiff seeking to impose individual liability on an owner must 'pierce the corporate veil.'").

James River and Janmark argue that Janmark does not owe Cal Dive a duty of indemnification under the MSA because Janmark is not a signatory to the MSA and thus not a party to the MSA. *See* Dkts. 48 at 6, 61 at 1, 62 at 4, 67 at 1. Underwriters argues that Janmark is an affiliated company of Rife LLC and thus a party to the MSA. *See* Dkts. 59 at 4, 60 at 1, 66 at 1. After examining the MSA, the parties' arguments, and the applicable law, the court determines that the MSA is unambiguous. Further, the court concludes that Janmark is not a party to the MSA and is not bound by its terms as a non-signatory. Even assuming Janmark is an affiliated company of Rife LLC, Underwriter's argument fails because Rife LLC cannot contractually bind Janmark—a separate legal entity—without Janmark's assent to the terms. *See Thomas*, 825 F. App'x at 207; *Binstock*, 452 F. Supp. 3d at 574; *see also* Restatement (Second) of Contracts § 17 (1981).

6

This case is analogous to the situation described in *Binstock*. *See* 452 F. Supp. 3d 561. There, Sitework signed an NDA "on behalf of itself and its affiliates and each of their respective employees, officers, directors, shareholders, partners and agents." *Id.* at 570. Weatherford sought to enforce the NDA against three non-signatory defendants—Eric Binstock, Powder River, and Elite Life. *Id.* Eric Binstock owned all three companies. *Id.* Weatherford argued that the NDA bound Powder River and Elite Life because they were affiliates of Siteworks. *Id.* The *Binstock* court rejected this argument because it was "irrelevant" that the contract recited the affiliate companies as parties "absent evidence that they agreed to the contract" even though the companies were all owned by Eric Binstock. *Id.* at 575. The written contract could not "establish a contract with Siteworks' affiliates absent a theory such as alter-ego." *Id.*

The court concludes that *Binstock* is persuasive. Rife LLC signed the MSA with a recitation that Rife LLC "and its affiliated and related companies" are parties. Dkts. 49, Ex. 1A at 4; 59, Ex. 6A at 1. Underwriters now seeks to enforce the MSA against non-signatory defendant Janmark. Dkts. 59, 60. Underwriters argues that Janmark is bound by the terms of the MSA because it is an affiliate of Rife LLC and Jeannette Rife owned both companies. Dkts. 59 at 4, 71 at 2. The court rejects this argument because it is irrelevant if Rife LLC recites Janmark as a party absent evidence that Janmark agreed to the contract even though Jeannette Rife owned both Rife LLC and Janmark. *See Ibe*, 836 F.3d at 524; *see also Thomas*, 825 F. App'x at 207. Further, the contract between Cal Dive and Rife LLC is not evidence of a contract with Janmark absent a theory such as alter ego. *See Magee*, 2020 WL 1188445, at *2.

7

Underwriters attempts to distinguish *Binstock* by noting that the opinion does not explicitly state who signed the NDA on behalf of Siteworks.[1] Dkt. 71 at 1. Underwriters contends this difference is critical because, in the instant case, Jeannette Rife signed on behalf of Rife LLC and was capable of binding both Rife LLC and Janmark. *Id.* at 2. Underwriters' attempt to distinguish *Binstock* fails because the record shows it was undisputed that Eric Binstock signed on behalf of Siteworks. *See, e.g.,* Compl. Ex. 1 at 11, *Binstock*, 452 F. Supp. 3d 561 (No. 4:19-cv-4258), ECF No. 1-1. More to the point, it does not matter who physically signed the contract on behalf of Siteworks because it was Siteworks, not Eric Binstock, who was a party to the NDA. *See Binstock*, 452 F. Supp. 3d at 470. When an owner signs a legal document on behalf of a corporation, it binds the corporation only; to bind the owner or another entity, the owner would have to sign again on behalf of themselves or the other entity. *See F.D.I.C. v. Trans Pac. Indus., Inc.*, 14 F.3d 10, 12 (5th Cir. 1994). As the owner of all three companies, Eric Binstock could have bound Powder River and Elite Life in addition to Siteworks by signing the NDA on their behalf, but the recitation that non-signatory affiliate companies were party to the NDA was insufficient. *See Binstock*, 452 F. Supp. 3d at 570. The instant case presents the same situation. Jeanette Rife could have bound Janmark by signing the MSA on its behalf, but the recitation that non-signatory affiliate companies were party to the MSA was insufficient. *See id.* at 575.

Thus, unless Underwriters can pierce the veil of Rife LLC, Janmark is not bound by the terms of the MSA. *See id.* Underwriters has neither presented a veil piercing theory nor put forth sufficient evidence to support a theory such as alter ego. *See* Dkts. 7, 59, 60, 65, 66, 71; s*ee also*

---

[1] Underwriters also argues that *Binstock* is distinguishable because an individual, Eric Binstock, was a named defendant whereas the instant case involves only business entities. Dkt. 71 at 1–2. The court concludes that this difference does not materially impact the analysis.

8

*Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999) ("[T]here must be evidence of complete domination . . . 'one-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil.'" (quoting *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691 (5th Cir. 1985))). Therefore, the court concludes that Janmark is not bound to indemnify Cal Dive under the terms of the MSA.

### B. Motions for Summary Judgment

Janmark's alleged duty to indemnify Cal Dive is premised solely on the contractual terms of the MSA. *See* Dkts. 7, 59, 60, 65, 66, 71. The court has determined that Janmark is not a party to the MSA and is not bound by its terms. *Supra*, III(A). This determination on a threshold question is dispositive for all four motions for summary judgment pending before the court. Therefore, the court does not reach the parties' alternative arguments. *See* Dkts. 48, 59, 60, 61.

#### 1. James River and Underwriters' Cross-Motions for Summary Judgment

James River moves for summary judgment requesting that the court declare it has no duty to defend or indemnify Cal Dive, Janmark, or any other affiliated entity for any claims or allegations arising out of the Underlying Lawsuit. Dkt. 47 at 3. Further, James River moves for summary judgment on Underwriters' counterclaim as subrogees to Cal Dive's interests. *Id.* Underwriters moves for summary judgment on its counterclaim. Dkt. 60 at 1. Underwriters' motion argues that the MSA required Janmark to indemnify Cal Dive, and James River is liable as Janmark's insurer. *Id.*

*i. James River's Motion*

As movant, James River has the initial burden of demonstrating the absence of a genuine issue of material fact, and it is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 323. It satisfies this burden by first establishing that Janmark is the sole insured—under its assumed name of Rife Industrial Services—and the policy does not cover Rife LLC. Dkts. 56, Ex. 2A at 277–278; 59, Ex. 10A; 60, Ex. 3. Further, James River argues that the record contains no evidence for a valid claim that is covered by the policy because all the potential claims are based on the MSA and Janmark is not bound by its terms. Dkt. 49, Ex. 2A at 293; *supra*, III(A).

Thus, the burden shifts to the defendants to set forth specific facts showing a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e). The only defendant to file a response to James River's motion for summary judgment was Underwriters. *See* Dkt. 65. It is undisputed that James River's policy covers Janmark but not Rife LLC. Dkt. 65 at 1–3. Underwriters' only theory of Janmark's liability is based on the MSA. *See id.* Thus, Underwriters cannot meet its burden unless Janmark had a contractual duty to indemnify Cal Dive under the MSA. Janmark is not a party to the MSA and thus has no contractual duty to indemnify Cal Dive. *Supra*, III(A). Therefore, Underwriters cannot meet its burden, and James River is entitled to summary judgment.

*ii. Underwriters' Motion*

As movant, Underwriters has the initial burden of demonstrating the absence of a genuine issue of material fact, and it is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 323. Underwriters cannot carry its initial burden because its motion requires Janmark to have a duty to indemnify Cal Dive under the terms of the MSA. *See* Dkt. 60 at 5. Janmark is not a party to the MSA and thus has no contractual duty to indemnify Cal Dive. *Supra*, III(A). Therefore,

10

since Underwriters has not provided an alternative theory of liability, it is not entitled to summary judgment on its counterclaim against James River.

### 2. Janmark and Underwriters' Cross-Motions for Summary Judgment

Underwriters filed a crossclaim against Janmark for indemnity, seeking an award in the amount of the settlement of the Underlying Lawsuit plus attorneys' fees and costs. Dkt. 7 at 10–16. Underwriters and Janmark have filed cross-motions for summary judgment on that crossclaim. Dkts. 59, 60. Janmark's potential liability is premised solely on Underwriters' argument that Janmark has a contractual duty to indemnify Cal Dive under the MSA. See Dkts. 7 at 13–16, 59 at 10–11. The court has already determined that Janmark is not a party to the MSA and is not bound by its terms. *Supra*, III(A). Therefore, Janmark is entitled to judgment as a matter of law for Underwriters' crossclaim.

### IV. CONCLUSION

For the reasons given above, James River's motion for summary judgment (Dkt. 47) and Janmark's motion for summary judgment (Dkt. 61) are GRANTED. Underwriters' motions for summary judgment (Dkts. 59, 60) are DENIED. Therefore, it is DECLARED that James River has no duty to defend or indemnify Cal Dive, Janmark, or any other affiliated entity for claims or allegations arising out of the Underlying Lawsuit. Underwriters' counterclaim against James River and crossclaim against Janmark are DISMISSED WITH PREJUDICE. The court will issue a final judgment concurrently with this memorandum opinion and order.

Signed at Houston, Texas on April 12, 2022.

_____
Gray H. Miller
Senior United States District Judge